**HOME OWNERS' LOAN CORPORATION v WADSWORTH et**

Ohio Appeals, 1st Dist, Hamilton Co

No 5372. Decided Feb 28, 1938

Miss Florence G. Denton, Columbus, for Appellant.

W. W. Clippinger, Cincinnati, and Chas. H. Otterman, for Appellees.

## OPINION

By ROSS, PJ,

Appeal on questions of law from the court of common pleas of Hamilton county.

Pursuant to order of court, certain real estate was sold at sheriff's sale in a foreclosure proceeding. The appellant claims that it bid in the property, and one Virginia C. Ashley claims she bid in the property through her attorney, a Mr. Clippinger.

The deputy crying the sale stated:

"Q. I will ask you whether or not you cried this sale, as deputy sheriff? A. Yes sir.

Q. What return did you make to the clerk of the sale?

A. The return was made in the name of Virginia C. Ashley. The name of The Home Owners Loan Corporation was typed in first then scratched out. That is just a matter of form. We make our returns sometimes a week in advance of the sale, assuming the plaintiff is going to buy them in. We do that in order to save us time.

Q. But your return shows the actual buyer that bid it in at the sale?

A. Virginia C. Ashley is the clerk's notation on that.

Q. And the return was made accordingly?

A. Yes.

Cross Examination by Mr. Calhoun:

Q. Do you recall my coming down to the sheriff's office, Mr. Podesta?

A. Yes sir.

Q. And that was after the decree of confirmation and distribution had gone on?

A. Yes.

Q. I asked you about that and you told me I would have to take it up with Mr. Malloy?

A. Yes.

Q. After the name of Virginia C. Ashley was scratched out Mr. Heitzler came in?

A. That's right.

Q. At that time Mr. Heitzler said there would have to be an order of Court before this could be changed?

A. That's right.

Q. There was not any attempt on Mr. Malloy's part or on my part to change the records of this Court, was there?

A. No sir, there was not.

Q. And at the time at which I called your attention to it you saw the name "plaintiff" had been erased from this book, did you not?

A. Yes, but there are times when Mr. Heitzler is crying the sale and I am taking care of the book when I may have the name "plaintiff" written down two or three days in advance.

THE COURT: Do I understand the word "plaintiff" there means nothing?

A. I write it down in advance of the sale assuming the plaintiff is going to buy it in. Once in a while we are mistaken. That may have happened in this case although I don't say it did.

Q. You call a good many sales?

A. I do.

Q. And you don't know who you knock them down to, do you?

A. On the stand I couldn't tell you, I cry so many. That's up to the clerk.

By Mr. Clippinger:

Q. But you do know when you make your return you make it to the real party who bid it in?

A. Oh, yes.

By Mr. Calhoun:

Q. You take that from the book?

A. From the notation the clerk gives me.

Q. You didn't make this on here?

A. Oh, no. As a rule, that make it out

"pl" and then the amount of the bid.

The clerk who made the notation of sale testified:

"Q. Is this your writing down here?

A. This is my handwriting.

Q. Is that "pl" there your writing? A. Yes.

Q. When did you put that "pl $1333.34" on there?

A. After Mr. Podesta said the sale was completed. The majority of the time the sales are bought in by the plaintiff, and to expedite matters we put "pl", then put down the amount it was sold for, and after that was made Mr. Clippinger came over and said he bought it. I thought possibly there was an error and the plaintiff didn't buy it.

THE COURT: Who told you the plaintiff bought it?

A. Really no one told me who bought it. Mr. Podesta was up on the stand, he said it was sold. We take it for granted in most cases that the plaintiff bought it in. Then when Mr. Clippinger came over and said he bought it, I said "Who do you represent?" He said "I represent Virginia O. Ashley and I will give you a deposit on the sale." I said "If you will wait a minute until we have these other sales, I will take care of you, give you a receipt."

It appears from the record that as far as the employes of the Sheriff's office are concerned that there is no recollection independent of the records present, other than that here stated. This is perfectly natural in view of the great number of sales made through this office.

Each of the contending bidders claim to have made an identical bid and the bid made by Mr. Clippinger was forfeited by a check received under the circumstances related.

It is also strenuously asserted that if the bid of the plaintiff had not been accepted, it would have bid a larger sum in order to cover its security.

This matter was presented to the court in a previous hearing. The case was remanded to the court of common pleas with the following instructions:

"with instructions that said Court determine who, if anyone, was the successful bidder at the Sheriff's sale, and after that issue has been determined that the Court determine in the exercise of a sound discretion whether the sale to such bidder be confirmed or another order of sale issued."

It appears that the trial court concluded that the return of the sheriff was conclusive. While such return does carry a presumption of regularity it is always a rebuttable presumption.

Further, the trial court always possesses the power in its sound discretion to set aside any sale in the interests of justice, especially when it appears there is some confusion as to just what occurred at the sale and there is a substantial showing that the sale price is inadequate.

It was the hope of this court in previously remanding the case that the trial court would in its sound discretion order a new sale. It is now our conclusion that it should have done so, and we again remand the case with instructions to so order.

The judgment of the court of common pleas is, therefore, reversed, and the cause remanded to the court of common pleas for further proceedings in accordance with this opinion.

HAMILTON & MATTHEWS, JJ, concur.